[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-13930
Non-Argument Calendar
_____

D.C. Docket No. 4:18-cv-00290-WS-GRJ

DAVID ANSGAR NYBERG,

Plaintiff - Appellant,

versus

RICHARD D. DAVIDSON,
Commissioner,
MELINDA COONROD,
Commissioner,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(June 4, 2019)

Before WILSON, MARTIN, and HULL, Circuit Judges.

PER CURIAM:

David Nyberg, an inmate serving a Florida sentence in a Nevada prison, appeals the dismissal of his complaint against two members of the Florida Commission on Offender Review. Nyberg's complaint alleges two commissioners, Richard Davidson and Melinda Coonrod, voted to deny him in parole in retaliation for his exercise of his First Amendment right to file lawsuits and his Eighth Amendment right to be free of cruel and unusual punishment. The district court properly dismissed most of Nyberg's claims. However, we conclude Nyberg did state one plausible claim: a First Amendment retaliation claim against Davidson. We therefore affirm in part, reverse in part, and remand for further proceedings.

## I.

In 1975, Nyberg was convicted of first-degree murder and sentenced to a term of imprisonment in the Florida Department of Corrections (the Department). In the late 1980s, Nyberg testified against a Florida corrections officer in an Inspector General investigation. Nyberg says the Department retaliated against him with transfers and strip searches.

In response, Nyberg brought several federal and state lawsuits against the Department and corrections officers. On one occasion, corrections officers

2

threatened Nyberg in a federal courthouse in the presence of United States Marshals. The Marshals immediately reported the threat to a United States Magistrate Judge. After the threat, the Department settled Nyberg's lawsuits with an agreement to house him at Marion Correctional Institution and assign him to work in the law library there. Nyberg continued to litigate against the Department from Marion Correctional Institution, which he alleges led to corrections officers planting a knife in his cell.

Ultimately, in 1992, the Department arranged to transfer Nyberg to Idaho for his protection. Idaho briefly returned Nyberg to Florida in 1995 due to overcrowding. Florida corrections officers badly beat Nyberg upon his return. Finally, in 1996, the Department arranged for Nyberg's transfer to Nevada, again for his protection, where he remains incarcerated to this day. The settlement agreement requiring the Department to house Nyberg at Marion Correctional Institution if he is in its custody remains in effect.

Fast forward to 2015, and Nyberg was up for parole before the Florida Commission on Offender Review. Nyberg alleges Davidson and Coonrod both knew his litigation against the Department meant he could not return to Florida.

The commission's initial vote on Nyberg's parole resulted in a three-way split. One commissioner voted to parole him. Davidson voted to deny parole.

Coonrod voted to extend the parole date for two years pending Nyberg's participation in an "FIU" reentry program at Everglades Correctional Institution.[1]

Nyberg's advocates attempted to persuade Davidson and Coonrod to change their votes. They explained that Nyberg cannot attend the FIU program due to the terms of his settlement with the Department. As one put it, the commissioners had set "conditions [that] are impossible for him to meet." Nyberg's advocate also said the Department refused to allow him to return to attend the FIU reentry program.

In response, Davidson said:

[I]t sounds like there is an agreement between Mr. Nyberg and the State of Florida that Mr. Nyberg agreed that he would not come back for whatever the underlying reasons are. Now, I don't believe that Mr. Nyberg gets to enter into an agreement, and for lack of a better word, to then for his benefit to remain under that agreement that is bilaterally entered into by Mr. Nyberg and the State of Florida.

Later in the hearing, Davidson continued:

And so I think it is incumbent on Mr. Nyberg to readdress the agreement that he entered into with the Florida Department of Corrections to see if there is some sort of willingness on behalf of the Department to revisit that agreement. . . . And so the onus is not on this Commission, but the onus is on Mr. Nyberg to have this issue readdressed with the Florida Department of Corrections to see if there some willingness on their behalf to allow him to return so he can participate in the program that this Commission has referred him to.

Coonrod said she did not feel comfortable paroling Nyberg and continued, "I know Dr. Shern, I know that program [the FIU program at Everglades Correctional

---

[1] The record does not say what "FIU" stands for.

4

Institution].  I wish he [Nyberg] could go to a program that I know and the people that I trust to give me an honest assessment of an inmate."

The hearing ended with the Commission granting Nyberg a 24-month extension on his parole date.

Nyberg filed a complaint alleging Coonrod and Davidson denied him parole because of his prior lawsuits against the Florida Department of Corrections.  He asserted claims under 42 U.S.C. § 1983 for First and Eighth Amendment retaliation.  Because Nyberg proceeded in forma pauperis, the district court reviewed the complaint and sua sponte dismissed for failure to state a claim. Nyberg timely appealed.

## II.

We review de novo the district court's decision to dismiss a suit for failure to state a claim, accepting well-pleaded allegations in the complaint as true and construing them in the light most favorable to the plaintiff.  Hunt v. Aimco Props., L.P., 814 F.3d 1213, 1221 (11th Cir. 2016).  A complaint must include "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007).  A complaint is facially plausible where there is enough factual content to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).  We liberally

construe pro se pleadings.  Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam).

We first discuss Nyberg's First Amendment retaliation claim and then turn to his Eighth Amendment retaliation claim.

A.

To adequately plead First Amendment retaliation, an inmate must allege he (1) engaged in First Amendment protected conduct and (2) suffered an adverse action that would deter a person of ordinary firmness from engaging in First Amendment protected conduct (3) as a result of having exercised his First Amendment rights.  Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008).

These are the only three elements of the claim.  Nonetheless, Coonrod and Davidson assert, as the district court did below, that Nyberg's First Amendment retaliation claim must fail because there is no constitutional right to parole.  While there is no constitutional right to parole, an action, such as parole denial, that ordinarily would not violate the First Amendment may run afoul of the Constitution if done for a retaliatory purpose.  Wright v. Newsome, 795 F.2d 964, 968 (11th Cir. 1986) (per curiam); see also Lebron v. Sec'y, Fla. Dep't of Children & Families, 710 F.3d 1202, 1217 (11th Cir. 2013) ("[U]nder the well-settled doctrine of 'unconstitutional conditions,' the government may not require a person to give up a constitutional right in exchange for a discretionary benefit conferred

by the government where the benefit sought has little or no relationship to the right." (quoting Dolan v. City of Tigard, 512 U.S. 374, 385, 114 S. Ct. 2309, 2317 (1994) (alterations adopted)). Coonrod and Davidson may not lawfully vote to deny parole in order to retaliate against Nyberg exercising his First Amendment rights. On a related note, Coonrod and Davidson are wrong to assert that Nyberg's claim fails because he has no right to attend a particular rehabilitation program. To state a retaliation claim, Nyberg is not required to show that he had a right to the benefit denied. He must instead show he was denied a benefit because he exercised his rights.

The district court was likewise mistaken to think it matters whether the denial of parole itself violated Nyberg's constitutional rights. The crux of a retaliation claim is that someone suffered an adverse action for having exercised a constitutional right, not that the adverse action deprived someone of such a right. See Wright, 795 F.2d at 968.

With these matters cleared up, we see that Nyberg plausibly alleged a First Amendment retaliation claim against Davidson but not against Coonrod. The First Amendment plainly guarantees Nyberg's right to file a lawsuit. Wright, 795 F.2d at 968. And denying Nyberg parole no doubt constitutes an adverse action that would deter an inmate of ordinary firmness from engaging in First Amendment protected conduct. See Watison v. Carter, 668 F.3d 1108, 1115 (9th Cir. 2012)

(reversing dismissal of an inmate's First Amendment retaliation claim based on allegations that two corrections officers lied at the inmate's parole hearing in retaliation for filing grievances, which caused the inmate to be denied parole); Rauser v. Horn, 241 F.3d 330, 334 (3d Cir. 2001) (reversing grant of summary judgment on inmate's First Amendment retaliation claim where evidence showed inmate was warned that filing lawsuits could result in denial of parole).

Nyberg plausibly alleged Davidson voted to deny parole because of the lawsuits against the Department. Nyberg says Davidson knew the circumstances that prevented Nyberg from returning to Florida. Nonetheless, Davidson said at Nyberg's parole hearing that he voted to deny parole at least in part because he did not think Nyberg should "benefit" from a settlement with the state. Davidson further put the "onus" on Nyberg to renegotiate the settlement and return to Florida. Yet the settlement and the "benefit" that came with it—the right to serve out a sentence without the threat of harm from the Florida Department of Corrections—were products of Nyberg's exercise of his First Amendment right to sue. Demanding that Nyberg renegotiate the settlement essentially asks him to forsake the relief he obtained in litigation he had the right to pursue. One plausible understanding of Davidson's vote to deny parole, then, is as retaliation for Nyberg's successful litigation against the Department.

8

That is not the only possible understanding, of course.  But on review of a dismissal for failure to state a claim, we ask only whether Nyberg's claim is plausible.  We believe this one is.  Both Nyberg and Davidson will have the chance to offer evidence in support of their respective positions at the summary judgment stage.

Nyberg did not state a plausible claim against Coonrod, however.  She said at the hearing that she was not comfortable paroling Nyberg from Nevada because she was unfamiliar with the program.  She said she would prefer the FIU program because she trusts it.  It was not retaliatory to vote to deny Nyberg parole on this basis.

B.

The Eighth Amendment prohibits correctional officers from using excessive force—force inflicted "maliciously and sadistically for the very purpose of causing harm"—on inmates.  Hudson v. McMillian, 503 U.S. 1, 6, 112 S. Ct. 995, 998 (1992) (quotation marks omitted).  Nyberg says Davidson and Coonrod retaliated against him for the exercise of his Eighth Amendment rights when they voted to deny him parole because he filed a lawsuit to vindicate those rights.

The district court correctly dismissed this claim.  The Eighth Amendment does not guarantee a right to file a lawsuit, and Nyberg does not point to any of his conduct that the Eighth Amendment would protect.  Nor could he.  The Eighth

Amendment does not give inmates the right to engage in conduct. Rather, it protects inmates from the conduct of others.

## III.

For these reasons, we **AFFIRM** in part, **REVERSE** in part, and **REMAND** to the district court for proceedings on Nyberg's First Amendment retaliation claim against Davidson.